IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SOUTHWEST FOUR WHEEL DRIVE
ASSOCIATION, a New Mexico nonprofit
association, and LAS CRUCES FOUR
WHEEL DRIVE CLUB, a New Mexico
unincorporated association,

        Plaintiffs,

vs.                                                         No.  CV00-799 LH/DJS-ACE

BUREAU OF LAND MANAGEMENT,
an agency of the United States Department of
the Interior, and AMY LEUDERS, District Manager,
Las Cruces District, Bureau of Land Management,

        Defendants,

and

THE WILDERNESS SOCIETY and
NEW MEXICO WILDERNESS ASSOCIATION,

        Intervenors.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendants' Motion to Dismiss, filed March 1, 2001 [Doc. No. 33].[1]  The Court, having read the pleadings and being apprised of the applicable law, concludes that the motion is well-taken.  Plaintiffs, however, will be granted leave to amend their action.

---

[1] Plaintiffs' Consolidated Reply Brief and Response to Defendants' Motion to Dismiss (Pls.' Consol. Br.) was filed April 6, 2001, and Defendants' Reply was filed April 23, 2001.

**I.     BACKGROUND**

Plaintiffs, on their own behalf and on the behalf of their adversely affected members, filed a petition for judicial review of Defendants' February 2, 1998, administrative decision to close certain alleged public roads within the Robledo Mountains Wilderness Study Area (WSA), which is part of the Las Cruces District of the Bureau of Land Management (BLM).  Plaintiffs' petition is pursuant to 5 U.S.C. §§ 551 et seq., and 701 et seq. (the Administrative Procedure Act (APA) and judicial review provisions); and 28 U.S.C. §§ 1331 (federal question), 2201(a) (declaratory relief), and 2202 (injunctive relief).  Plaintiffs allege they have exhausted their administrative remedies.

Plaintiffs are entities who, inter alia, promote organized four-wheeling.  One of the areas four-wheel enthusiasts use is in the Robledo Mountains, a portion of which was designated as a WSA in 1980.  On February 2, 1998, after other administrative action and review in which Plaintiffs and Intervenors were involved, Defendants implemented the Robledo Mountains Off-Highway Vehicles Implementation Plan (the Plan).  The Plan closed alleged public roadways within the Robledo Mountains WSA, prohibiting public vehicular use.  On or about February 12, 1998, Defendants also published in the Federal Register a notice of Emergency Closure of Vehicle Trails in and near the Robledo Mountains WSA, making the referenced closures effective February 18, 1998.

Plaintiffs contend that Defendants had no authority to close the alleged roads at issue to all vehicular traffic, notwithstanding the WSA designation of the land over which the alleged roads traverse, because under Revised Statute 2477 (R.S. 2477), now repealed, the roads are public

roads.² The relief Plaintiffs seek includes: a declaration that Defendants' actions closing the alleged roads were unlawful; a request the Court set aside those actions as arbitrary and capricious, an abuse of discretion, <u>ultra vires</u> of their authority and contrary to law; and a request that the Court enjoin Defendants from implementation of the closures set forth in the February 1998 Plan and Emergency Closure and order the opening of the alleged public roads by Defendants. In the alternative, Plaintiffs request that the Court remand the Plan and the Emergency Closure to Defendants for further action and public review, enjoining implementation of the Plan and the road closures in the interim.

The parties have filed briefs in accordance with <u>Olenhouse v. Commodity Credit Corp.</u>, 42 F.3d 1560 (10th Cir. 1994). Defendants also have filed a motion to dismiss. In their motion to dismiss, Defendants argue that the Court lacks subject matter jurisdiction over Plaintiffs' petition because Plaintiffs essentially are bringing a claim for real property to which the United States claims an interest and that such claims must be brought exclusively under the Quiet Title Act of 1972 (QTA), 28 U.S.C. § 2409a. In response, Plaintiffs contend that (1) that the QTA does not apply to this action, (2) the QTA is not an exclusive remedy and thus does not preclude their APA action, and (3) the BLM District Manager's actions were <u>ultra vires</u> and outside the scope of sovereign immunity. Intervenors The Wilderness Society and the New Mexico Wilderness

---

² R.S. 2477 provides: "The right-of-way for the construction of highways over public lands, not reserved for public uses, is hereby granted." 43 U.S.C. § 932, 14 Stat. 253 (1886). It was enacted by Congress in 1866 to assist in the development of the West by granting "rights of way for construction of highways over public lands to miners, farmers, ranchers, and homesteaders." Harry R. Bader, <u>Potential Legal Standards for Resolving the R.S. 2477 Right of Way Crisis</u>, 11 Pace Envtl. L. Rev. 485, 485 (1993). R.S. 2477 was repealed 110 years later by the Federal Land Policy Management Act of 1976 (FLPMA), § 706(a), Pub.L. No. 94-579, 90 Stat. 2793. All accepted rights-of-way existing at the time of R.S. 2477's repeal in 1976, however, remain valid. Consequently, twenty-five years after R.S. 2477's repeal, issues regarding the existence and the scope of R.S. 2477 rights-of-way continue to be litigated.

Alliance (collectively, TWS) did not file a response to Defendants' motion to dismiss.

## II. DISCUSSION

### A. The Quiet Title Act

The QTA allows a party to adjudicate a title dispute to real property in which the United States claims an interest. 28 U.S.C. § 2409a(a) ("The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights."). The waiver of sovereign immunity the QTA provides is limited. It excludes Indian lands, id. § 2409a(a), and "in order to insure that the waiver would not serve to disrupt costly ongoing Federal programs that involve disputed lands, . . . allow[s] the United States the option of paying money damages instead of surrendering the property if it los[es] the case on the merits," Block v. North Dakota, 461 U.S. 273, 283 (1983) (internal quotations omitted); 28 U.S.C. § 2409a(b). Additionally, preliminary injunctions are forbidden under the QTA, 28 U.S.C. § 2409a(c), and "[t]he United States shall not be disturbed in possession or control of any real property involved in any action under this section pending a final judgment or decree, the conclusion of any appeal therefrom, and sixty days," id. § 2409a(b). The QTA also has a twelve-year statute of limitations. Id. § 2409a(g).

The Supreme Court interpreted the QTA in Block v. North Dakota. Block involved a dispute as to ownership of a riverbed and the plaintiff originally invoked the Declaratory Judgement Act and the APA, among other statutes, as jurisdictional bases. The Supreme Court held that the QTA provides the exclusive procedure by which a claimant can judicially challenge the title of United States to real property and that all other bases of relief are foreclosed. Block,

461 U.S. at 276-77, 286.  The Supreme Court based its holding on its concern that a non-exclusive application of the QTA would render it "nugatory" and result in the United States being dispossessed of property "without being afforded the option of paying damages" or the QTA's twelve-year statute of limitations being avoided.  Id. at 285.

**B.  Title and "Adverse Claimants"**

The crux of the jurisdictional issue before the Court is whether Plaintiffs' petition is a quiet title action, and thus the Court will begin there.  For a claim to be a quiet title action within the QTA, it must involve a challenge to the United States' title to real property and the challenging party must be an "adverse claimant."  Block, 461 U.S. at 286; see Kansas v. United States, 249 F.3d 1213, 1224 (10th Cir. 2001).

1.  Title

Plaintiffs first contend they are not challenging the title of the United States, but merely raising an administrative review claim seeking compliance by Defendants "with their duties to recognize the rights that existed before . . . 1976."  Pls.' Consol. Br. at 9.  The Court disagrees.  Plaintiffs' challenge to Defendants' closure decision is based on a belief that the federal government has no, or limited, ownership rights to control the use of the alleged roads or rights-of-way involved.  See, e.g., Pls.' Br. in Chief at 2, 3 (Defendants "made serious errors . . . in failing to recognize the closed roads as open, public roads."  As public roads, "they could not be closed to all vehicle traffic."); id. at 23 ("Status as public roads under R.S. 2477 having been established, the question remains whether [the] BLM still has authority to close the roads."); id. at 25 (The "BLM omitted a critical step . . . by assuming [the alleged roads at issue] were 'trespass vehicle trails' and not valid existing rights-of-way." (quoting Adminis. R., Ex. 60 at 1)); Pls.'

5

Consol. Br. at 8 ("Plaintiffs have shown that the [alleged] roads [at issue] are 'valid existing rights' which must be recognized by [the] BLM."); id. at 18 (The "BLM cannot 'eviscerate the . . . dominant estate' of a right of way over federal land" and it "cannot simply close a public road because its use may impair wilderness values because, as a valid existing right, it qualifies as an 'exemption from the nonimpairment standard.'" (quoting Sierra Club v. Hodel, 848 F.2d 1068, 1087 (10th Cir. 1988)); id. at 29 "([T]he use was intended to create a public right to continued, permanent use of these roads."). Consequently, Plaintiffs' claim, at root level, is a title challenge. Rosette, Inc. v. United States, 141 F.3d 1394, 1396 (10th Cir. 1998) (Plaintiffs' claim "leads directly back to the question of title, and, as such, is inextricably linked to that question."); see Shawnee Trail Conservancy v. United States Dep't of Agric., 222 F.3d 383, 386 (7th Cir. 2000) ("The plaintiffs contend that because these easements and rights-of-way have been continually used and have not been vacated or abandoned, the right to control the use of the roads . . . are not held by the Forest Service. In other words, the plaintiffs contend that the Forest Service cannot restrict the use of the roads in the Atwood Ridge and Burke Branch areas because they do not own the property rights necessary to make decisions concerning their incidents of use."), cert. denied, __ U.S. __, 121 S.Ct. 768 (2001).

Plaintiffs next contend that their petition is not a quiet title action because a "road" claim "does not necessarily implicate[] title" and "limit[] a proponent to a QTA remedy."[3] Pls.' Consol.

---

[3] The parties have cited no direct authority regarding the status of R.S. 2477 public rights-of-way as interests, on non-interests, in title to real property. Plaintiffs' basis for their contention that "roads" to do not implicate title is that the federal government did not raise the QTA as a jurisdictional defense in other reported cases where road or similar claims were brought. Plaintiffs' argument (with citation of reported cases) fails to support Plaintiffs' proposition. It also is immaterial. A defect in subject matter jurisdiction may not be waived and may be raised at any time. Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1076-77 (10th Cir. 1999). Additionally, a court "is not bound by a prior exercise of jurisdiction in a case

Br. at 9.  Implicit in Plaintiffs' argument is that a determination regarding the existence of a perfected R.S. 2477 right-of-way is not a title determination.  The contention is not well-taken. Hat Ranch, Inc. v. Babbitt, 932 F.Supp. 1, 2 (D.D.C. 1995) ("Most actions under the [QTA] concern the incidents of land ownership and ownership per se.  Litigants cannot circumvent the provisions of the Act by drawing fine distinctions between the incidents of land ownership and ownership itself." (internal citations omitted)), aff'd sub nom., Hat Ranch, Inc. v. United States, No. 96-5025, 102 F.3d 1272, 1996 WL 654381 (D.C.Cir. Nov. 5, 1996) (unpublished disposition); cf. Kansas, 249 F.3d at 1224 ("[O]nly disputes pertaining to the United States' ownership of real property fall within the parameters of the QTA."; "The interest . . . must be some interest in the title to the property." (internal quotations, internal citation, and emphasis added in Kansas omitted)).

     Rights-of-way, easements, or roads are incidents of land ownership.  They implicate access to and use of real property and, thus, are sticks in the bundle of interests that constitute property ownership.  See Shawnee Trail, 222 F.3d at 386-89 (while challenge to designation of areas as Research Natural Areas could be brought under APA, challenges to authority to restrict use of roads, rights-of-way, or easements based on lack of ownership of property rights must be brought under QTA); Alaska v. Babbitt, 38 F.3d 1068, 1073-74 (9th Cir.1994) (property claims less than fee simple interests, such as rights-of-way, are within scope of QTA); cf. Sierra Club v. Hodel, 848 F.2d 1068, 1082 n.13 (10th Cir. 1988) ("[T]he above-cited cases concern the conflict between an alleged R.S. 2477 right-of-way and a competing claim of right to the land."),

---

where it was not questioned and it was passed sub silento."  United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38 (1952).

overruled on other grounds, Village of Los Ranchos de Albuquerque v. Marsh, 956 F.2d 970, 973 (10th Cir. 1992).  Furthermore, the Tenth Circuit not only has concluded that R.S. 2477 "[r]ights-of-way are a species of easements and are subject to the principles that govern . . . easements," Hodel, 848 F.2d at 1083 (citing J. Cribbett, Principles of the Law of Property at 273-74 (1962))[4]; id. at 1087-88, but that "easements are real property interests subject to quiet title actions" under the QTA, Kinscherff v. United States, 586 F.2d 159, 161 (10th Cir. 1978) (per curiam) (citing H.R. Rep. No. 92-1559 (1972), reprinted in 1972 U.S.C.C.A.N. 4547, 4552) (claims to an estate less than a fee simple, such as an easement, are included within scope of QTA).  Therefore, based on general property law principles and on Tenth Circuit precedent, the Court concludes that R.S. 2477 rights-of-way are ownership interests in real property within the meaning of the QTA.

2.  "Adverse Claimants"

Having concluded that a title claim is at issue here, the Court turns to the question of whether Plaintiffs are "adverse claimants" for purposes of the QTA.  The parties did not brief the issue and it is unclear whether Plaintiffs are seeking to quiet title in themselves or as members of the public.  Moreover, the relevancy of the nature of Plaintiffs' interest in the challenged title, for purposes of the QTA, is a presuppositional query.

As discussed above, Kinscherff v. United States, 586 F.2d 159 (10th Cir. 1978) (per curiam), in combination with Sierra Club v. Hodel, supports the proposition that R.S. 2477 rights-

---

[4] One treatise distinguishes public rights-of-way from easements (the class of which is made up in large part by private rights-of-way).  Herbert T. Tiffany, 3 The Law of Real Property § 772 at 232 (3d ed. 1939).  The treatise notes, however, "as burdens on the land, public and private rights-of-way are substantially identical."  Id. at 152 (3d ed. Supp. Oct. 2000).

8

of-way are title interests. However, Kinscherff also supports the proposition that, if Plaintiffs are not seeking to quiet title in themselves, they are not "adverse claimants" under the QTA.[5] While a "quiet title action may be brought by anyone claiming an interest in the real property," a claim to a real property interest in a public road as a member of the public "is not an interest in real property contemplated by" the QTA.[6] Kinscherff, 586 F.2d at 160. "Members of the public as such do not have a 'title' in public roads" and, thus, "the 'interest' plaintiffs seek to assert as part of the public is not of such a nature to enable them to bring a suit to quiet title." Id. at 160-61; see Long v. Area Manager, 236 F.3d 910, 915 (8th Cir. 2001) (right of individual to use public road is not a right or interest for purposes of the QTA, citing Kinscherff). Kinscherff, however, was decided prior to Block.

Subsequent to Block, other circuit courts of appeal have applied the QTA to actions in which the plaintiffs did not seek to quiet title in themselves.[7] See, e.g., Shawnee Trail, 222 F.3d 383 at 388 (concluding QTA applicable in "context of claims that do not seek to quiet title in the party bringing the action"); Metropolitan Water Dist. v. United States, 830 F.2d 139, 143 (9th Cir. 1987) (per curiam) ("MWD asserts that the QTA does not apply here because it is not

---

[5] In a red herring argument, Plaintiffs contend that if the Court concludes that the QTA is their exclusive remedy they will be caught in a Catch-22 situation because Defendants then will argue Plaintiffs lack standing under Kinscherff. (Defendants respond that Plaintiffs could join the proper parties.)  What Plaintiffs and Defendants fail to realize, however, is that Kinscherff presents more than a challenge to standing.  It presents an obstacle to concluding that Plaintiffs are "adverse claimants." If Plaintiffs are not "adverse claimants" under Kinscherff, then the QTA does not apply to this action. (This is a point the Intervenors understood.  TWS' Olenhouse Resp. Br. at 3 n.1.)

[6] Although the issue is phrased in Kinscherff as a title issue, it is more accurately viewed as an issue of whether the moving party is an "adverse claimant." See Shawnee Trail, 222 F.3d at 386-87.

[7] In Rosette, Inc. v. United States, 141 F.3d 1394 (10th Cir. 1998), the Tenth Circuit concluded that the QTA was the plaintiff's exclusive remedy, even though the plaintiff was not truly seeking to quiet title in itself.  However, the issue of the nature of the plaintiff's interest in the challenged title was not raised.

seeking to quiet title in itself. . . . Although MWD may not be seeking to quiet title to the land in itself, it seeks a determination of the boundaries of the Reservation."), aff'd sub nom. California v. United States, 490 U.S. 920 (1989) (per curiam).  In Shawnee Trail, the Seventh Circuit concluded that the QTA applies any time a party seeks a title determination regarding real property in which the United States asserts an interest.  The Seventh Circuit reasoned that even if the party bringing the action is not seeking to quiet title in itself, the party's claim "represents an assertion of title that runs adverse to the government," and in order to succeed the party bringing the action would have to demonstrate that the United States lacked title to the property in dispute.  Shawnee Trail, 222 F.3d at 387.

This Court concludes that, on the issue of "adverse claimants," Kinscherff is distinguishable and inapplicable to the action at bar.  Kinscherff did not involve a R.S. 2477 right-of-way, but a road built by the United States to access a dam site.  More importantly, Kinscherff preceded Block.  The rationale of Block, discussed above and applied by the Seventh and Ninth Circuits, supports the conclusion that when the remedy sought by a plaintiff against the United States is a determination of title, that determination is exclusively controlled by the QTA, regardless of the nature of the plaintiff's interest in that title.  Consequently, even if Plaintiffs are not seeking to quiet title in themselves, they are "adverse claimants" for purposes of the QTA.

**C.  Exclusivity or Inapplicablity of the Quiet Title Act**

Assuming that their challenge is one to quiet title, Plaintiffs contend for two reasons that the QTA is inapplicable to their petition or is not their exclusive remedy.  Plaintiffs first assert the QTA does not apply or is not their exclusive remedy because their challenge arises from an administrative action.  Plaintiffs contend that as a "matter of policy and judicial economy," the

10

APA should control issues arising from administrative proceedings. Pls.' Consol. Br. at 7. The Court acknowledges the policy merits of Plaintiffs' argument, but finds no other support for it. Although the challenge in Block may have been a direct challenge, and not one arising from an administrative proceeding, the Supreme Court made no distinction on those lines. McIntyre v. United States, 789 F.2d 1408, 1410-11 (9th Cir. 1986), overruled on other grounds, Fadem v. United States, 52 F.3d 202, 205 (9th Cir. 1994); see Alaska v. Babbitt, 38 F.3d 1068, 1075 (9th Cir. 1994). The Supreme Court conclusively held "that Congress intended the QTA to provide the exclusive means by which adverse claimants could challenge the United States' title to real property." Block, 461 U.S. at 286. The Supreme Court's bases for its holding also hold true whether the claim is a direct one or whether it arises from an administrative action. Furthermore, the APA confers no "authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. The Supreme Court concluded that "[t]he QTA is such an 'other statute,' because, if a suit is untimely under the QTA, the QTA expressly 'forbids the relief' which would be sought under § 702." Block, 461 U.S. at 286 n.22.

In their second argument regarding the inapplicability or nonexclusiveness of the QTA to their petition, Plaintiffs focus on the Supreme Court's conclusion regarding § 702, recited above. Plaintiffs contend their action is within the QTA's twelve-year statute of limitations and, thus, is not precluded from APA review by 5 U.S.C. § 702. Plaintiffs' argument is without merit. Whether the QTA's statute of limitations has run has not been litigated, and therefore it is too soon to conclude that it has not. Furthermore, even assuming the QTA's statute of limitations has not run, Plaintiffs seek preliminary injunctive relief, which the QTA expressly forbids.

11

Additionally, the QTA implicitly forbids a conceivable outcome under the APA – i.e., stripping the federal government of its interest in real property without first providing the government with an opportunity to retain such interest and pay just compensation. Consequently, even without the Supreme Court's mandate that the QTA is the exclusive remedy for title disputes where the federal government is the defendant, Plaintiffs' petition is precluded from APA review under the terms of § 702.

**D. Ultra Vires Doctrine**

Plaintiffs finally contend that Defendants' sovereign immunity is waived under the ultra vires doctrine recognized in Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 689 (1949), because the BLM District Manager ignored her statutory obligations. The Court is not persuaded. The BLM District Manager's alleged failure to ascertain the existence of valid existing or grandfathered rights and protect those rights, as required by statute, regulation, and/or policy, before making the challenged "road" closure decision does not constitute ultra vires action. First, an ultra vires act requires that the federal official at issue act outside her authority or the scope of her delegated power. Larson, 337 U.S. at 690; United Tribes of Shawnee Indians v. United States, 253 F.3d 543, 548 (10th Cir. 2001). "The mere allegation that the official acted wrongly 'does not establish that the officer, in committing that wrong, is not exercising the powers delegated to him by the sovereign. If he is exercising such powers the action is the sovereign's and a suit to enjoin it may not be brought unless the sovereign has consented." Shawnee Indians, 253 F.3d at 548-49 (quoting Larson, 337 U.S. at 693). It appears uncontested that administrative closures of WSAs to public vehicle use are within the BLM Manager's delegated authority. Pls.' Br. in Chief at 3 (FLPMA gives BLM authority to close roads).

Therefore, that the BLM Manager may have wrongfully made the challenged closure decision does not transform the decision into an <u>ultra vires</u> act, waiving sovereign immunity.  <u>Shawnee Indians</u>, 253 F.3d at 548-49.  Moreover, the exceptions to the application of the <u>ultra vires</u> doctrine also appear to apply here.  <u>Id.</u> at 548 (suit does not fall within the <u>ultra vires</u> doctrine because the "requested relief would require us to order federal officials to take various forms of affirmative relief and affect the disposition of sovereign property"); <u>see</u> <u>Larson</u>, 337 U.S. at 691 n.11.  Finally, Plaintiffs' <u>ultra vires</u> argument seems to be no more than a reworking of the officers' suit method of challenging federal government title to real property, a method the Supreme Court has concluded is precluded by the QTA.  <u>Block</u>, 461 U.S. at 281-85; <u>Alaska v. Babbitt</u>, 182 F.3d 672, 674-75 (9th Cir. 1999).

### III.  CONCLUSION

Plaintiffs' petition falls within the parameters of the QTA.  Therefore, the QTA is Plaintiffs' exclusive remedy and Plaintiffs' claims under the APA and for declaratory and injunctive relief are precluded.  In the interest of justice and judicial economy, Plaintiffs will be granted leave to amend their petition.  <u>Cf.</u> <u>Block</u>, 461 U.S. at 278 (district court required plaintiff to amend complaint to recite claim under QTA).

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, filed March 1, 2001 [Doc. No. 33], is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiffs may file an amended petition within thirty

days from the filing date of this Opinion.

_____
UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs:  Lee E. Peters, HUBERT & HERNANDEZ, P.A., Las Cruces, N.M.

Counsel for Defendants:  John W. Zavitz, U.S. ATTORNEY'S OFFICE, Albuquerque, N.M.

Counsel for Intervenors:  David L. Plotsky, Albuquerque, N.M., and Robert B. Wiygul, WALTZER AND ASSOCIATES, Biloxi, MS.