UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SOUTHWEST FOUR WHEEL DRIVE
ASSOCIATION, a New Mexico nonprofit
association, and LAS CRUCES FOUR
WHEEL DRIVE CLUB, a New Mexico
unincorporated association,**
       **Plaintiffs,**

v.                  CIV No. 00-799 LH/ACT-ACE

**BUREAU OF LAND MANAGEMENT,
an agency of the United States Department
of the Interior, AMY LEUDERS, District
Manager, Las Cruces District, Bureau of
Land Management, and THE UNITED
STATES OF AMERICA,**
       **Defendants,**

**THE WILDERNESS SOCIETY and
NEW MEXICO WILDERNESS
ASSOCIATION,**
       **Intervenors.**

**MEMORANDUM OPINION AND ORDER OF DISMISSAL**

**THIS MATTER** comes before the Court on motions of the Defendants and Intervenors

("Defendants") for dismissal or alternatively, for summary judgment (Docket Nos. 62 and 71).[1]

---

[1] These motions are entitled "Federal Defendants' Motion to Dismiss, or, In the Alternative, Motion for Summary Judgment" and "Defendant-Intervenors' Motion to Dismiss, or in the Alternative Motion for Summary Judgment", respectively.

1

Plaintiffs have raised the issue as to the propriety of a summary judgment motion in this matter. The parties are informed that the Court has not relied upon any factual materials submitted by Defendants[2], but has reviewed the administrative record ("AR") before it. In addition, the Court has taken into its consideration the September 8, 1983 decision of the Department of Interior Board of Land Appeals ("IBLA")[3], after according it judicial notice.

The Court, having considered these limited materials as well as the pleadings, motions and briefs of the parties, concludes that this Court does not have jurisdiction to inquire into the merits of the case because it is time barred by the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a(g). *See Block v. North Dakota,* 461 U.S. 273, 292 (1983). Given this lack of jurisdiction, both motions will be **granted** and the case **dismissed.**

**I.  Overview of Plaintiffs' Claims**

In 1998, the BLM closed approximately nine miles of what Plaintiffs characterize as "public roads" to vehicular traffic. These alleged roads consist of twelve separate routes, which Plaintiffs contend were frequently used by their members for many years prior to 1998. In their Amended Complaint, Plaintiffs ask the Court to quiet title in the public in these "roads" in the Robledo Mountains, to review the administrative decisions by which such "roads" were closed, and to grant a permanent injunction against the closure of such public "roads".

Plaintiffs do not contest the title of the United States to the real property adjacent to and

---

[2] Furthermore, the Court has not relied on any factual materials submitted by Plaintiffs.

[3] **Howe**, 76 I.B.L.A. 27 (Sept. 8, 1983).

around these "public roads"[4] but rather, claim that the public owns easements, given the status of these roads as "public roads" (Amended Compl. ¶ 36). In short, they want this Court to quiet title to these alleged easements in the public (Amended Compl. ¶ 10).

They contend that their interest in these roads was acquired through use by the public of the roads from at least the 1950's until closure of the roads in 1998. They claim that these roads attained "public road" status pursuant to United States Revised Statute 2477 (R.S. 2477).

## II  Procedural Background

From 1977 through 1979, the Bureau of Land Management ("BLM") conducted a number of wilderness inventories in New Mexico, and published a public report entitled "New Mexico Wilderness Review Initial Inventory Decision" on July 9, 1979. This document identified 38,670 acres in the Robledo Mountains as "roadless". The BLM produced two documents in 1980, entitled "Wilderness Study Area Proposals" and "Wilderness Study Area Decisions." The BLM subsequently designated 11,640 acres out of the 38,670 acres as the Robledo Mountains Wilderness Study Area. *See* 45 Fed. Reg. 75,590 (November 14, 1980). The area of public lands involved in this lawsuit is this 11,640 acre unit.

This designation decision was protested. The BLM denied the protests. This denial was appealed to the Department of Interior Board of Land Appeals. The IBLA consolidated ten such administrative appeals by three individuals and addressed them in a single decision, dated September

---

[4] The property adjacent to these "public roads" is the 11,640 acre unit known as the Robledo Mountains Wilderness Study Area ("WSA").

8, 1983[5]. The appeal included the same 11,640 acre unit. The appellants' position in the IBLA appeal was that "roads" within the WSA were incorrectly designated by BLM as "trails" or "ways".[6] The IBLA concluded that appellants failed to establish by convincing evidence that the routes in question were "roads". It concluded that two-track vehicle trails do not constitute roads, and affirmed the BLM decision to designate the Robledo unit as a WSA.

Since 1980, the amount of vehicular traffic in this 11,640 acre unit has increased. The BLM analyzed the impacts of this increased use on resource values. Based on the results of both agency and outside studies, it determined that the significant increase in vehicular traffic was adversely impacting the wilderness values that the BLM was required to protect under law.[7] Following an administrative process to close these routes, the BLM issued the Robledo Mountains Off-Highway Vehicle Implementation Plan ("the Plan") on February 2, 1998 (AR at 43). Ten days later, Defendants published in the Federal Register a notice of "Emergency Closure of Vehicle Trains in and near the Robledo Mountains Wilderness Study Area, making the vehicle closures referenced therein effective February 18, 1998. (AR at 41).

Plaintiffs maintain that the BLM improperly closed these "roads" when it issued the Plan. On June 2, 2000, a petition for the review of the routes closures was filed in this Court. The Court dismissed this petition on August 28, 2001 for lack of jurisdiction. In that Memorandum Opinion and Order (Docket No. 45), this Court concluded that "the QTA [Quiet Title Act] is Plaintiffs' exclusive

---

[5] This opinion is Exhibit A to the Federal Defendants' Memorandum (Docket No. 63).

[6] For example, Mr. Howe's appeal was based on the argument that the area was not roadless because of the existence of two-track jeep trails in the unit, which he said made the Robledo unit roaded, and not roadless.

[7] *See* 43 U.S.C. § 1782(c). It is the charge of the BLM to "prevent unnecessary or undue degradation of the lands."

remedy and Plaintiffs' claims under the APA [Administrative Procedures Act] and for declaratory and injunctive relief are precluded." The Court granted Plaintiffs leave to amend. Plaintiffs filed an amended complaint on September 27, 2001.

Defendants now seek dismissal of the amended complaint.

### III. Statute of Limitation Issue

Defendants' first argument is that this lawsuit is time barred. The QTA, 28 U.S.C. § 2409(g), provides for a 12 year statute of limitations:

> Any civil action under this section, except an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date that the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

Because it provides a statutory waiver of sovereign immunity, the courts strictly and narrowly construe the QTA and its statute of limitations. *See Block,* 461 U.S. 273 (1983). All that is necessary for a claim to accrue under this statute is a reasonable awareness that the government claims some interest adverse to the plaintiffs. *Knapp v. United States*, 636 F.2d 279, 283 (10th Cir. 1980).

Defendants argue that Plaintiffs knew or should have known in 1980, when the WSA was designated, that the United States claimed there were no "public roads" within the Robledo WSA. They contend that by definition a WSA designation means the United States asserts that the area is roadless. Further, they argue that the 1980 WSA designation would not have been valid if there were "public roads" within the WSA that had been constructed and maintained prior to 1976. Defendants argue that the 1980 publication in the *Federal Register* of notice of the BLM's "Final Intensive

Wilderness Inventory Decisions" triggered the QTA's statute of limitations.

Furthermore, they contend that, as Plaintiffs knew or should have known, this issue was later addressed in the September 8, 1983 IBLA decision. In its decision, the IBLA indicated that the chief issue before it was "whether certain routes were correctly designated as "ways" rather than "roads" by BLM. It indicated that appellates' purpose in taking the appeal was to show the existence of roads in WSAs.

The IBLA relied in its decision upon definitions contained in the BLM Wilderness Handbook (WIH): "According to the WIH 1978 at page 5, 'The word roadless refers to the absence of roads which have been improved and maintained by mechanical means to insure relatively regular and continuous use. A way maintained solely by the passage of vehicles does not constitute a road.' " The IBLA noted that the contention that a route is, in fact, a road must be supported by proof of mechanical improvement and mechanical maintenance, and concluded that appellants had failed to provide such proof. Specifically, the decision stated that a vehicle route, "once improved by mechanical means, must receive maintenance by mechanical means as needed in order to qualify as a road.. Appellants do not establish error by alleging mechanical improvement and mechanical maintenance in the past .... Appellants' submissions are limited to sketchy allegations. The contention that a route is, in fact, a road must be supported by *proof* of mechanical improvement and mechanical maintenance,...." In short, the IBLA upheld the BLM's decision that the units in question were roadless, and that two-track vehicle trails do not constitute roads.

To evaluate the statute of limitation issue, the Court will analyze the effect of publications in the *Federal Register*, the effect of the IBLA decision, and that of R.S. 2477.

### **(A)  Effect of *Federal Register* Publication**

As noted above, on November 14, 1980, the BLM designated 11,640 acres as the Robledo Mountains Wilderness Study Area.  *See* 45 Fed. Reg. 75,590.  I agree with Defendants' argument that this publication provided notice that triggered the QTA's statute of limitations.  "Publication in the *Federal Register* is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance."  *Shiny Rock Mining Corp. v. United States*, 906 F.2d 1362, 1364 (9th Cir. 1990).  *See also Govt. of Guam v. United States*, 744 F.2d 699, 701 (9th Cir. 1984)(executive order published in the *Federal Register* constituted formal notice for QTA limitations period).  This designation put Plaintiffs and the public on notice in 1980 that BLM claimed all of the area and did not recognize any alleged rights-of-way, thus triggering the 12 year limitations period for challenging that finding.

### **(B)  Effect of the IBLA Decision**

This conclusion is buttressed by the subsequent appeal to the Interior Board of Land Appeals.  As noted above, the IBLA denied the appeal and upheld the Robledo Mountains WSA designation.  This decision was issued on September 8, 1983.  At that time, Plaintiffs could have filed a QTA suit challenging the WSA designation, yet they failed to do so.

The IBLA decision expressly states that it is an appeal from the New Mexico BLM office, which denied protests on wilderness inventory units.  In footnote 1, the decision states that these WSA designations were published in the *Federal Register*, 45 Fed. Reg. 75,590, November 14, 1980.  The IBLA decision does not specifically mention any of the routes that Plaintiffs now argue are "roads".  Rather, the decision upheld the BLM's decision that the units in question were roadless, and

that two-track vehicle trails do not constitute roads. It is clear that the issue as to whether or not the same routes were "roads" was decided in the negative by the IBLA in 1983.

Plaintiffs argue that Defendants cannot make use of the IBLA appeal for "quasi-res judicata" or "quasi-collateral estoppel" purposes. In fact, the Court does not use the fact of this appeal for purposes of *res judicata* or *collateral estoppel*, but rather as proof that the Plaintiffs and public knew or should have known that the United States claimed that the land in question was roadless at the time this decision was rendered, if not before.

### (C)  R.S. 2477

Plaintiffs contend that Defendants had no authority to close the "roads" in question to all vehicular traffic, notwithstanding the WSA designations of the land over which the "roads" traverse. Plaintiffs allege that R.S. 2477 offered to the public a grant of public lands as public roads or highways, upon acceptance by the public in New Mexico by use of such lands as roads prior to October 21, 1976. (Amended Compl. ¶ 39).[8] They contend that the "roads" closed by the BLM are public roads under New Mexico law and were established as public roads on federal public lands under R.S. 2477, prior to the enactment of the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1702, *et seq*. in 1976.

---

[8] R.S. 2477 provides: "The right-of-way for the construction of highways over public lands, not reserved for public uses, is hereby granted." 43 U.S.C. § 932, 14 Stat. 253 (1886). It was enacted by Congress in 1866 to assist in the development of the West by granting "rights of way for construction of highways over public lands to miners, farmers, ranchers, and homesteaders." Harry R. Bader, "Potential Legal Standards for Resolving the R.S. 2477 Right of Way Crisis," 11 PACE ENVTL.L.REV. 485 (1993). R.S. 2477 was repealed 110 years later by the Federal Land Policy Management Act of 1976 (FLPMA), § 706(a), Pub.L.No. 94-579, 90 Stat. 2793. All accepted rights-of-way existing at the time of R.S. 2477's repeal in 1976, however, remain valid. Consequently, 25 years after the repeal of R.S. 2477, issues regarding the existence and scope of R.S. 2477 rights-of-way continue to be litigated.

Plaintiffs urge that state law controls the definition of an R.S. 2477 road, whereby a public road can be established by use alone, without any requirement of mechanical construction or maintenance. They argue in favor of the primacy of state road law in R.S. 2477 interpretation, or at least its incorporation into federal law, arguing that such an approach precludes the BLM from cutting off the public's right to public roads by defining them away. They claim that New Mexico has R.S. 2477 rights-of-way across the WSA, and that they are entitled to use them.

Specifically, Plaintiffs rely on the case of *Sierra Club v. Hodel,*, 848 F.2d 1068, 1078-83 (10th Cir. 1988), *overruled on other grounds*, *Village of Los Ranchos de Albuquerque v. Marsh*, 856 F.2d 970, 973 (10th Cir. 1992). They cite this case for the argument that this area of federal law has deferred to state law in determining when, where and how the open-ended grant of R.S. 2477 is accepted by the public. They contend that New Mexico has never wavered from its judicial decisions that allow creation of a public road by the simple passage of vehicles upon open ground. These are all arguments that could have been made before they were time barred. The fact of the matter is that in 1980, and again in 1983, agency decisions were rendered and affirmed, based upon the presumption that no "public roads" existed in the Robledo WSA. Doubts as to whether land was reserved for public use is resolved in favor of the government. *See Fitzgerald v. United States*, 932 F.Supp. 1195, 1201 (D.Ariz. 1996). At these junctures 23 and 20 years ago, Plaintiffs "knew or should have known" that the BLM claimed that there were no "public roads" in the WSA, under R.S. 2477. That was the time for Plaintiffs to assert the primacy of state law definitions in this area and to make a claim for these easements. They are now too late to do so.

**Conclusion**

Plaintiffs argue that it is undisputed that, prior to February 1998, the public had never been permanently and physically blocked from using these "roads", citing AR 41.  They contend that this fact demonstrates their lack of actual or imputed knowledge of the claim of the United States, prior to closure of these "roads".

I conclude that although 1998 was arguably the first time BLM enforced its claim, the claim was known or should have been known through publication in the *Federal Register*, and the decisive ruling of the IBLA.  The distinction is critical because the statutory limitations language makes no reference to enforcement of the Government's claim, only to knowledge of the claim's existence.  28 U.S.C. § 2409 a(g).

**WHEREFORE,** for these reasons, the motions of the Defendants and Intervenors ("Defendants") for dismissal (Docket Nos. 62 and 71) are granted.  I conclude that this case is time barred, that this Court is without jurisdiction to proceed, and that this case shall be **dismissed.**

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE